[No. A045724. First Dist., Div. Five. Mar. 1, 1991.]

FRANK McCOY et al. Plaintiffs and Appellants, v.
HEARST CORPORATiON et al., Defendants and Respondents.

COUNSEL

Charles O. Morgan, Jr., and Paul Kleven for Plaintiffs and Appellants.

Pillsbury, Madison & Sutro, Walter R. Allan, Jerome C. Dougherty, Craig E. Stewart, Margaret C. Crosby, Alan L. Schlosser, Edward M. Chen, Matthew A. Coles and Arthur Brunwasser for Defendants and Respondents.

OPINION

HANING, J.—Appellants, two police officers and an assistant district attorney, obtained judgments in their libel actions against respondents—a newspaper and two of its reporters. The California Supreme Court reversed the judgments without directions, for insufficiency of the evidence, and the

trial court then entered judgment for respondents and dismissed the actions. The sole issue on appeal is whether the unqualified reversal for insufficiency of the evidence entitles appellants to a retrial. We conclude it does not.

## HISTORY

Appellants based this defamation action on a series of articles by respondents suggesting that appellants had conspired and engaged in deliberate misconduct to obtain the murder conviction of an innocent person. The jury returned verdicts in favor of appellants. Respondent newspaper's motions for judgment notwithstanding the verdict (JNOV)[1] and for a new trial were denied and the judgment was affirmed by this court. The California Supreme Court reversed, concluding that "at the time the articles were published, [respondents] did not possess a subjective awareness of probable falsity" (*McCoy* v. *Hearst Corp.* (1986) 42 Cal.3d 835, 868 [231 Cal.Rptr. 518, 727 P.2d 711]), and therefore that "the record does not establish liability under *New York Times* [v. *Sullivan* (1964) 376 U.S. 254 (11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412)]." (*Id.*, at p. 873.) Thus, the judgment was reversed on the grounds of insufficiency of the evidence to support a finding of "actual malice," a necessary element of appellants' causes of action. (*New York Times* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412].) The Supreme Court's reversal was unqualified: "The judgment of the Court of Appeal is reversed with directions to reverse the judgment of the trial court." (*McCoy* v. *Hearst Corp.*, *supra*, 42 Cal.3d at p. 873.) The remittitur then issued awarding respondents their costs.

Appellants thereafter filed a new at-issue memorandum, whereupon respondents moved for judgment, contending the Supreme Court's decision was a final determination precluding retrial. In granting the motion the trial court stated, in part: "It seems to me absolutely clear, if you take the time to read the Supreme Court decision, that this case is over. The Supreme Court held that it was its role to make findings based upon the evidence. It made the findings and ended this case. . . . [¶] . . . The Supreme Court has decided and ended this case." This appeal followed.

## DISCUSSION

### I

In reliance upon *Erlin* v. *National Union Fire Ins. Co.* (1936) 7 Cal.2d 547, 549 [61 P.2d 756] (*Erlin II*), appellants contend that an unqualified

---

[1] For reasons not disclosed by the record, respondent reporters withdrew their motions for JNOV.

reversal remands the case for a new trial. In *Erlin* v. *National Union Fire Ins. Co.* (1933) 217 Cal. 374 [18 P.2d 660], the Supreme Court reversed a judgment for the plaintiff in an action to recover insurance commissions from the defendant, holding there was insufficient evidence to support the judgment—that "on the merits, the plaintiff is not entitled to recover." (*Id.*, at p. 377.) Thereafter, plaintiff brought the case for retrial and the trial court refused to hear it on the ground the Supreme Court had decided the case on its merits and did not intend to grant a retrial. The Supreme Court then reviewed the case again and held that an unqualified reversal "remands the case for a new trial and places the parties in the same position as if the case had never been tried. [Citations.] Of course, upon a retrial the decision of the appellate court becomes the law of the case upon the facts as then presented. But that law must be applied by the trial court to the evidence presented upon the second trial . . . . [¶] . . . Upon the reversal of the judgment in his favor he became entitled to a new trial and the opportunity to present evidence in support of the allegations of his complaint." (*Erlin II*, *supra*, 7 Cal.2d at p. 549.)

*Erlin II* is one of a series of California Supreme Court cases, commencing with *Stearns* v. *Aguirre* (1857) 7 Cal. 443, applying the general rule that an unqualified reversal remands the case for a new trial. *Stearns* involved an action on a promissory note in which a judgment for the plaintiff was previously reversed without direction by the Supreme Court for reasons relating to the manner in which a judgment was entered by the trial court. (*Stearns* v. *Aguirre* (1856) 6 Cal. 176.) The trial court ultimately denied a new trial and entered judgment for the defendant. Plaintiff appealed, contending he was entitled to a new trial. The Supreme Court held: "We are now called on, for the first time, to determine whether a simple judgment of reversal is a bar to further proceedings in the same suit, and as the point has never before been adjudicated by this Court, and we have no rule of court or of law which would control our judgment in the premises, we think it would be more just to follow the rule of the common law on this subject, by which the parties in this suit have in all probability been governed. At common law, the Appellate Court either affirms or reverses the judgment, upon the record before it. The opinion which is rendered is advisory to the inferior Court, and after the reversal of an erroneous judgment, the parties in the Court below have the same rights that they originally had." (*Stearns* v. *Aguirre*, *supra*, 7 Cal. at p. 448.)

The statement in *Erlin II* that a reversal without directions "remands the case for a new trial and places the parties in the same position as if the case had never been tried" is understandable in the ordinary case of prejudicial error. (*Erlin II*, *supra*, 7 Cal.2d at p. 549.) In such a situation an error of law has occurred during the proceedings which prevented the appellant

from receiving a fair trial. A reversal under these circumstances informs the trial court that a proper motion for new trial, had it been made, should have been granted. However, a reversal for insufficiency of the evidence is based on the fact that the plaintiff's evidence does not, as a matter of law, support the plaintiff's cause of action. When a judgment for the plaintiff is reversed for insufficiency of the evidence the appellate court is, in effect, advising the trial court that a nonsuit, directed verdict or JNOV should have been entered.

When the plaintiff has had full and fair opportunity to present the case, and the evidence is insufficient as a matter of law to support plaintiff's cause of action, a judgment for defendant is required and no new trial is ordinarily allowed, save for newly discovered evidence. (See Code Civ. Proc., §§ 629, 657; 8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 18 et seq.)[2] When trial courts grant nonsuits or judgments notwithstanding the verdict based on insufficiency of the evidence and are affirmed on appeal, new trials do not follow as a matter of course. Certainly, where the plaintiff's evidence is insufficient as a matter of law to support a judgment for plaintiff, a reversal with directions to enter judgment for the defendant is proper. (See *Cocking* v. *State Farm Mut. Automobile Ins. Co.* (1970) 6 Cal.App.3d 965, 971 [86 Cal.Rptr. 193]; *Venne* v. *Standard Accident Ins. Co.* (1959) 171 Cal.App.2d 242, 248 [340 P.2d 30]; *Mayer* v. *Beondo* (1948) 83 Cal.App.2d 665, 670-671 [189 P.2d 327]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 631.) It is anomalous to end the case when the trial court correctly enters a nonsuit or JNOV on the ground that the plaintiff has, as a matter of law, failed to prove a cause of action, but to allow plaintiff another trial when the appellate court makes the same determination, since the standard applied by the respective courts is virtually identical. (See *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 745 [87 Cal.Rptr. 376, 470 P.2d 360]; *Sanchez-Corea* v. *Bank of America* (1985) 38 Cal.3d 892, 906 [215 Cal.Rptr. 679, 701 P.2d 826].)

For these reasons, it appears more reasonable that when the plaintiff has had full and fair opportunity to present his or her case, a reversal of a judgment for the plaintiff based on insufficiency of the evidence should place the parties, at most, in the position they were in after all the evidence was in and both sides had rested. A judgment for the defendant would then be entered, and a new trial permitted only for newly discovered evidence. (§ 657, subd. 4.) A new trial under such circumstances is governed by the law of the case doctrine as defined by the appellate decision (*Erlin II, supra,* 7 Cal.2d at p. 549; see also *Hall* v. *Superior Court* (1955) 45 Cal.2d 377, 381

---

[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[289 P.2d 431]; *Wells* v. *Lloyd* (1942) 21 Cal.2d 452, 455 [132 P.2d 471]), and the law of the case doctrine applies to an appellate decision on the sufficiency of the evidence. (*Hall* v. *Superior Court, supra.*) "The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." (*Harte-Hanks, Inc.* v. *Connaughton* (1989) 491 U.S. 657, 685 [105 L.Ed.2d 562, 587, 109 S.Ct. 2678, 2694]; *Milkovich* v. *Lorain Journal Co.* (1990) 497 U.S. __, __ [111 L.Ed.2d 1, 17, 110 S.Ct. 2695, 2705].) Consequently, retrying the case on the same evidence is a needless exercise, since the law of the case would compel another decision for the defense.

The obvious problems caused by rigid application of the *Erlin II* rule has led to recognition of an exception. *Stromer* v. *Browning* (1968) 268 Cal.App.2d 513, 518-519 [74 Cal.Rptr. 155], analyzed *Erlin II* as follows: "It has been stated: 'An unqualified reversal *ordinarily* has the effect of remanding the cause for a new trial on all of the issues *presented by the pleadings.*' . . . But the rule that an unqualified reversal without directions remands the case and sets it at large for further trial is a *general* one . . . . [¶] The fact that the rule . . . is a 'general' rule implies that it has limitations. One limitation is that a case is to be set at large for retrial only when that is the intent of the appellate court. 'Judgment reversed' at the end of an opinion is, of course, strong indication of such intent. But when the opinion as a whole establishes a contrary intention, the rule is inoperative. To hold otherwise would be to make a fetish of form." The *Stromer* exception has been adopted and applied by other Courts of Appeal. (See, e.g., *Moore* v. *City of Orange* (1985) 174 Cal.App.3d 31, 36-37 [219 Cal.Rptr. 301]; *No Oil, Inc.* v. *City of Los Angeles* (1984) 153 Cal.App.3d 998, 1004 [200 Cal.Rptr. 768]; *Salaman* v. *Bolt* (1977) 74 Cal.App.3d 907, 915 [141 Cal.Rptr. 841]; *In re Marriage of Steinberg* (1977) 66 Cal.App.3d 815, 820-822 [136 Cal.Rptr. 299]; *Barth* v. *B.F. Goodrich Tire Co.* (1971) 15 Cal.App.3d 137, 141-142 [92 Cal.Rptr. 809].)

We conclude we need not decide whether *Stromer* applies, since we are of the opinion that insofar as reversals for insufficiency of the evidence are concerned, *Erlin II* has been modified by statute. At the time *Erlin II* was decided, section 629 provided that the trial court could, in its *discretion*, enter a JNOV only when the aggrieved party had previously moved unsuccessfully for a directed verdict, and if a motion for JNOV was denied it was *discretionary* with the appellate court to "order judgment to be so entered when it appears from the whole evidence that a verdict should have been so directed at the trial . . . ."

As a result of post-*Erlin II* amendments, section 629 now provides, in part: "The [trial] court, . . . , either of its own motion, . . . , or on mo-

tion of a party against whom a verdict has been rendered, *shall* render judgment in favor of the aggrieved party notwithstanding the verdict whenever a motion for a directed verdict for the aggrieved party should have been granted *had* a previous motion been made . . . ." (Italics supplied.) The appellate courts' duty was also rendered mandatory: "If the motion for [JNOV] be denied and if a new trial be denied, *the appellate court shall*, when it appears that the motion for [JNOV] should have been granted, *order judgment to be so entered* on appeal . . . ." (§ 629, italics supplied.)

■ Consequently, as stated by Division Two of this court in *Bank of America* v. *Superior Court* (1990) 220 Cal.App.3d 613, 624 [269 Cal.Rptr. 596]: "The effect of section 629 is that a reversal on appeal for insufficiency of the evidence concludes the litigation just as it would have been concluded if the trial court had correctly entered [JNOV]." This rule is particularly applicable in libel actions in light of the principle encouraging early resolution of free speech cases because of the chilling effect upon the exercise of First Amendment rights caused by unnecessarily protracted litigation. (*Good Government Group of Seal Beach, Inc.* v. *Superior Court* (1978) 22 Cal.3d 672, 684-685 [150 Cal.Rptr. 258, 586 P.2d 572], cert. den., (1979) 441 U.S. 961 [60 L.Ed.2d 1066, 99 S.Ct. 2406]; *Miller* v. *National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1479 [232 Cal.Rptr. 668, 69 A.L.R.4th 1027]; *Sipple* v. *Chronicle Publishing Co.* (1984) 154 Cal.App.3d 1040, 1046 [201 Cal.Rptr. 665].)

II

■ Appellants argue that neither the *Bank of America* rationale nor section 629 is applicable here. Their argument is as follows: (1) In the ordinary JNOV case, the trial court's power is the same as when considering a directed verdict—the court cannot weigh the evidence or judge the credibility of witnesses; the evidence must be viewed in the light most favorable to the prevailing party, and if any substantial evidence, or reasonable inferences to be drawn therefore exist to support the verdict, JNOV is improper (*Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 110 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282]); and (2) in the instant case the Supreme Court engaged in a de novo review under a different standard.

Appellants' first point is answered by the fact that libel actions governed by the *New York Times* standard are not ordinary cases. All judges have a responsibility in these cases to independently examine the record to determine whether it provides clear and convincing proof of actual malice (*Bose Corp.* v. *Consumers Union of U.S., Inc.* (1984) 466 U.S. 485, 498-511 [80 L.Ed.2d 502, 514-524, 104 S.Ct. 1949]; *New York Times* v. *Sullivan, supra,* 376 U.S. at pp. 284-285 [11 L.Ed.2d at pp. 708-710]), and thus the stan-

dards for reviewing motions for JNOV or nonsuit in such actions involve a de novo review of the evidence of actual malice—an element which is not applied to the same motions in other cases.

On their second point, appellants focus on the Supreme Court's statement that its "constitutional responsibility" required it "to step beyond the usual confines of appellate review . . . . [¶] This court is not bound to consider the evidence of actual malice in the light most favorable to [appellants] or to draw all permissible inferences in favor of [appellants] . . . . [¶] Finally, if warranted, this court may do as the *Bose* [*Corp.* v. *Consumers Union of U.S., Inc., supra*, 466 U.S. 485] court did . . . and substitute its own inferences on the issue of actual malice for those drawn by the trier of fact." (*McCoy* v. *Hearst Corp., supra*, 42 Cal.3d at p. 846, fn. omitted.)

Appellants contend the foregoing language demonstrates that the Supreme Court engaged in impermissible factfinding, and in support of their contention rely on *Anderson* v. *Liberty Lobby, Inc.* (1986) 477 U.S. 242, 255 [91 L.Ed.2d 202, 106 S.Ct. 2505], wherein the United States Supreme Court stated, in a libel case: "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. [Citation.]"

In *Anderson*, the high court was reviewing a decision of the Circuit Court of Appeals, which had affirmed the trial court's grant of summary judgment in a public-figure libel case, and the issue was "whether the clear-and-convincing-evidence requirement must be considered by a court ruling on a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure in a case to which *New York Times* [v. *Sullivan, supra*, 376 U.S. 254] applies."[3] *Anderson* held that it did. (*Anderson* v. *Liberty Lobby, Inc., supra*, 477 U.S. at p. 244 [91 L.Ed.2d at p. 209].)

However, as we have stated, on the issue of actual malice, as opposed to other factual issues in the case, the courts are required to independently examine the record to determine whether it provides clear and convincing proof thereof. (*New York Times* v. *Sullivan, supra*, 376 U.S. at pp. 284-285

---

[3] Rule 56 of the Federal Rules of Civil Procedure is similar to California's summary judgment statute. (§ 437c.) Subdivision (c) of this rule provides that summary judgment "shall be rendered forthwith if the [supporting and opposing papers] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

[11 L.Ed.2d at pp. 708-710]; *Bose Corp.* v. *Consumers Union of U.S., Inc.*, *supra*, 466 U.S. at pp. 498-511 [80 L.Ed.2d at pp. 514-524].)

### III

Appellants also contend that reversal and remand for new trial is compelled by *Harte-Hanks, Inc.* v. *Connaughton, supra*, 491 U.S. 657, which was decided after the California Supreme Court's decision herein. Appellants rely on a fact in *Harte-Hanks* (the failure of the libel defendants to interview a critical witness) which is similarly present in the instant case. However, our Supreme Court has independently reviewed the record and concluded that the failure of the instant respondents to interview the witness in question does not, as a matter of law, establish a case of actual malice within the factual matrix of this case, and we are bound by that decision. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

The judgment is affirmed.

Low, P. J., concurred.

**KING, J.** —I concur but write separately to urge the California Supreme Court to grant review in this case.

The real issue is what the California Supreme Court intended when it ordered the unqualified reversal. While we can only speculate as to that intent, the California Supreme Court can speak definitively. This case was particularly suited for transfer to the California Supreme Court, before our decision, upon petition by a party. (Cal. Rules of Court, rule 27.5.) Absent such a petition we had no choice but to try cutting the Gordian knot, but unlike Alexander the Great we can now ask Gordius himself to untie it.

I also suggest that, whatever the California Supreme Court's intent, an unusual equitable consideration favors a grant of review and retrial order in this case. In its prior opinion, the California Supreme Court misread a pivotal United States Supreme Court decision, *Bose Corp.* v. *Consumers Union of U.S. Inc.* (1984) 466 U.S. 485, 512-513 [80 L.Ed.2d 502, 514-524, 104 S.Ct. 1949], and consequently misinterpreted the standard of independent appellate review in First Amendment libel cases.

The trial court in *Bose* had determined that certain testimony as to lack of malice was not credible. In its *McCoy* opinion, the California Supreme Court stated that in *Bose* the United States Supreme Court rejected the trial

court's credibility determination. (*McCoy* v. *Hearst Corp.* (1986) 42 Cal.3d 835, 844 [231 Cal.Rptr. 518, 727 P.2d 711].)

Subsequently, however, in *Harte-Hanks, Inc.* v. *Connaughton* (1989) 491 U.S. 657, 689, fn. 35 [105 L.Ed.2d 562, 589, 109 S.Ct. 2678], the United States Supreme Court repudiated this interpretation of *Bose*. The petitioner in *Harte-Hanks* had argued, as the California Supreme Court stated in *McCoy*, that the *Bose* decision had rejected the trial court's credibility determination. The *Harte-Hanks* opinion disapproved this interpretation of *Bose*, explaining that in *Bose* the court had actually *accepted* the trial court's credibility determination but had been unwilling to infer actual malice. (*Ibid.*) The *Harte-Hanks* opinion reiterated that even within the context of independent appellate review, substantial deference is to be afforded to trial court credibility determinations "because the trier of fact has had the 'opportunity to observe the demeanor of the witnesses . . . .' " (*Id.* at p. 688 [105 L.Ed.2d at p. 589], quoting *Bose Corp.* v. *Consumers Union of U.S. Inc.*, *supra*, 466 U.S. 485 at pp. 499-500 [80 L.Ed.2d at pp. 515-516].)

The California Supreme Court's erroneous reading of *Bose* was apparently critical to its decision. The court said, "Both the principles announced in *Bose* and *the manner in which the high court carried out its functions of independent review*, are the guide to be followed in reviewing the evidence at hand." (*McCoy* v. *Hearst Corp.*, *supra*, 42 Cal.3d at p. 845, italics added.) Had the California Supreme Court correctly interpreted *Bose* and applied the standard of independent appellate review with due deference to trial court credibility determinations, it might well have affirmed the judgment. It is, of course, too late to correct this mistake, but the California Supreme Court can do the next best thing by ordering a retrial.

Appellants' petition for review by the Supreme Court was denied May 30, 1991. Panelli, J. did not participate therein.